PLUMBERS LOCAL UNION NO. 519 OF the UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL–CIO, a labor organization, Appellant,

v.

CONSTRUCTION INDUSTRY STABILIZATION COMMITTEE and John T. Dunlop, as Chairman of the Construction Industry Stabilization Committee, Appellee,

Plumbing Industry Program, Inc., a Florida non-profit corporation et al., Appellee-Intervenor.

No. 5–3.

Temporary Emergency Court of Appeals.
May 23, 1973.

Rehearing Denied June 20, 1973.

Joseph H. Kaplan, Miami, Fla. (Kaplan, Dorsey, Sicking, Hessen & Rodenberg, P.A. Miami, Fla., with him on the brief) for appellant.

Paul T. Michael, Civil Division, Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Asst. Atty. Gen., Washington, D. C., Robert Rust, U. S. Atty. and Raymond Ray, Asst. U. S. Atty. S. D. Florida, William E. Nelson, Stanley D. Rose, and William C. White, Dept. of Justice, Washington, D. C., on the brief) for appellee.

Jonathan L. Alpert, Miami, Fla. (Leo M. Alpert, Miami, Fla., on the brief) for intervenor-appellee.

Before HASTIE, ANDERSON and JOHNSON, Judges.

ANDERSON, Judge:

Plumbers Local Union 519, the recognized bargaining agent for approximately 1,000 plumbers in Dade County, Florida, appeals from a judgment of the United States District Court for the Southern District of Florida, denying it relief from rulings by the Construction Industry Stabilization Committee (CISC) which substantially reduced two negotiated wage increases. We affirm.

In 1970, Local 519 and Plumbing Industry Program, Inc. (PIP), the representative of the plumbing contractors in Dade County, negotiated a labor contract for the period from April 16, 1970 to April 15, 1973. This contract included hourly wage and fringe benefit increases of $1.50 and $.65 on October 16, 1971 and April 16, 1972, respectively. Because of the wage freeze during Phase I of the President's economic stabilization program (see Executive Order 11615) the increase scheduled for October 16th was not put into effect. In January 1972, after the institution of Phase II (see Executive Order 11695) the Union applied to CISC for approval of the retroactive payment of the frozen wages. On February 25 the Committee summarily disapproved the application, prompting the Union to resubmit it with various supporting affidavits and a brief. CISC heard oral argument on April 13 and four days later reaffirmed its original decision, but authorized a $.40 increase. The Committee in the same notice informed the Union that the increase scheduled for April 16 had also been disapproved, but it subsequently granted instead, an increase of $.40.

Local 519 commenced this action on May 19, seeking an order declaring both of the original, negotiated increases valid under the Economic Stabilization Act of 1970, as amended (the Act). At the

same time, the Union wrote to all the contractors who were parties to the 1970 agreement, demanding that money to cover both increases in full be put in escrow pending judicial review of CISC's decision. CISC immediately objected to this proposal, and cited its policy against such escrows, see 6 C.F.R. § 201.41(c)(4); Pay Board Ruling 1972–125, 37 Fed.Reg. 26708 (1972); Ray Board Ruling 1972–34, 37 Fed.Reg. 9350 (1972). On June 6 the Union proposed instead an escrow account for only the $.80 in approved increases and this was accepted by PIP. On August 22, however, the appellant moved for a preliminary injunction to prevent the Committee from interfering with an escrow agreement for the full $2.15.

The preliminary injunction was denied on October 13, D.C. 350 F.Supp. 6. Cross-motions for summary judgment ensued. On December 29 the District Court granted the Government's motion and denied the Union's. This appeal followed.[1]

■ CISC was the first body established by the President under the Act. It was created on April 3, 1971 by Executive Order 11588, "to effectuate the stabilization of wages and prices consistent with and in furtherance of effective collective bargaining in the [construction] industry." Its existence and function have been repeatedly reaffirmed by the President during the various phases of the economic stabilization program, see Executive Orders 11695 (§ 5), 11640 (§ 15) and 11627 (§ 14). Every wage increase in the construction industry must be approved by either CISC or one of its craft dispute boards before it may legally be put into effect, Executive Order 11588 (§ 4(c)). Of course, the authority of the Committee and the scope of its review of proposed wages cannot be wider than that conferred upon the President by § 203 of the Act. More specifically, in its deliberations which are the subject of this review, CISC was bound by the provisions of § 203(c), which relate to pay increases provided by contracts executed prior to August 15, 1971.

Section 203(c) has three interrelated subparts. Section 203(c)(1) mandates the allowance of wage increases scheduled to be effective after November 11, 1971 but included in a contract executed before August 15, 1971, "unless the President determines that the increase provided in such contract is unreasonably inconsistent with the standards for wage and salary increases published under subsection (b)."[2] Section 203

---

1. Appellant's first contention is that the District Court erred by its denial of preliminary relief. However, the disposition of this case on the merits renders this issue moot. Moreover, this court has just recently approved the policy prohibiting escrows which Local 519 challenged, United States v. I.B.E.W., Local No. 11, TECA, 475 F.2d 1204 (1973). Local 519 also seeks for us to review the District Court's denial of its motion to compel answers to certain interrogatories. The Union, however, concedes that this "is merely ancillary to its appeal on the merits" and it specifically waves any claim for a remand for additional discovery. It is, therefore, actually seeking an advisory opinion, which is beyond the power of the court. St. Pierre v. United States, 319 U.S. 41, 42, 63 S.Ct. 910, 87 L.Ed. 1199 (1943).

2. Section 203(b) provides that:
"In carrying out the authority vested in him by subsection (a), the President shall issue standards to serve as a guide for determining levels of wages, salaries, prices, rents, interest rates, corporate dividends, and similar transfers which are consistent with the purposes of this title and orderly economic growth. Such standards shall—
(1) be generally fair and equitable;
(2) provide for the making of such general exceptions and variations as are necessary to foster orderly economic growth and to prevent gross inequities, hardships, serious market disruptions, domestic shortages of raw materials, localized shortages of labor, and windfall profits;
(3) take into account changes in productivity and the cost of living, as well as such other factors consistent with

(c)(2) applies identical language to wage increases which were agreed upon before August 15, 1971 and scheduled to become effective before November 14, 1971, but not paid because of the Phase I freeze. Section 203(c)(3) provides that in addition to wage increases allowed under § 203(c)(1) and (2), those contracted for prior to August 15, 1971 should be permitted "if the President determines that . . . prices have been advanced, productivity increased, . . . or funds have otherwise been raised or provided for in order to cover such increases."

■■ Before turning to the applicability of § 203(c) to the contract between Local 519 and PIP, two disputed preliminary issues must be resolved. First, it is necessary to consider where the burden of proof lies when a party seeks to take advantage of these provisions. In making this assignment, the variation in the wording of § 203(c)(1) and (2) as opposed to § 203(c)(3) is critical. Under the former, an increase is to be permitted *unless* the President determines to the contrary. By the latter, an increase is to be allowed only *if* the President determines that it falls within the stated class. We interpret this to mean (1) that the burden of proof rests upon the Government to demonstrate that a wage increase otherwise sanctioned by § 203(c)(1) or (2) is contrary to the standards of § 203(b) and therefore impermissible, but (2) that the burden of proof rests upon the party seeking to justify a wage increase under § 203(c)(3), to demonstrate that the necessary pre-conditions, e. g., price advances or increased productivity, have occurred.

■ Secondly, we must decide whether CISC's procedures were proper as a matter of administrative law. The Committee, in its notice of disapproval, merely stated that "the [proposed] wage levels [are] unreasonably inconsistent with the stabilization policies of the Committee," without expressly delineating the basis for this conclusion. · It was not until the Government moved for summary judgment in the court below that Dr. John Dunlop, then Chairman of CISC, submitted an affidavit explicitly stating what factors the Committee considered and why it concluded as it did. Appellant argues that judicial review of CISC's decision is limited to the actual record of the Committee, which would not include Dr. Dunlop's "self-serving affidavit" which "was nothing more than a *post hoc* rationalization." Therefore, the Union contends, since there is no record of CISC's deliberations, and nothing in its notice suggests a factual basis for its decision, the Committee failed to sustain its burden under § 203(c)(1) and (2) and Local 519 was entitled to summary judgment below.

If the deliberations of CISC were the usual administrative adjudications, subject to the full panoply of the Administrative Procedure Act, there might be a serious question as to whether CISC's decision complied with 5 U.S.C. § 557. However, § 207(a) of the Economic Stabilization Act of 1970, as amended, specifically exempts the agencies of the economic stabilization program from most of the Administrative Procedure Act, particularly, in their handling of such matters as those involved in this case, 5 U.S.C. § 557. While § 207(a) leaves these agencies subject to 5 U.S.C. § 555(e),[3] the notice here sufficiently

the purposes of this title as are appropriate;
(4) provide for the requiring of appropriate reductions in prices and rents whenever warranted after consideration of lower costs, labor shortages, and other pertinent factors; and
(5) call for generally comparable sacrifices by business and labor as well as other segments of the economy."

For Phase II, such standards were issued as Part 201 of the Economic Stabilization Regulations, 6 C.F.R. § 201.1, et seq.

3. This statute provides that:
"Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in

complied with that provision. It would have been preferable for CISC to have included in its notice of denial some reference to the § 203(b) standards upon which it had relied and we trust that in the future it will do so, but nonetheless, in the case at bar, the evidence relevant to the § 203(b) standards so clearly supports CISC's conclusion as to make its terse disposition self-explanatory. Dr. Dunlop's post-litigation affidavit was merely expository of the Committee's obvious, although implicit findings, and the District Court therefore properly accepted and used it.

■ The Union asserts that by virtue of § 203(b)(3), CISC was required specifically to find that there had been no increase in productivity before it could withdraw this contract from within the scope of § 203(c)(1) and (2). But § 203(b)(3) comprises only part of the overall standards to which § 203(c)(1) and (2) refer. The basic rule of § 203(b) is that wages and prices should be "consistent with the purposes of [the Act] and orderly economic growth." The data included in Dr. Dunlop's affidavit, nowhere disputed by the Union, resoundingly supports the conclusion that the proposed wages would have prevented the stabilization of construction industry wages and prices in southern Florida and shattered the historical relationship between Local 519 and other craft unions in the area. Dr. Dunlop also specifically referred to CISC's having considered the increases' possible justifiability on the basis of increased productivity. The Committee's allowance of two $.40 increases implicitly recognized that Local 519's contract partially complied with the standards of § 203(b). This type of judgment, involving the balancing of interrelated economic factors, is peculiarly within the scope of the expertise with which CISC

is presumptively endowed. This court has repeatedly held that great deference should be given to the expertise of the economic stabilization agencies. See United States v. Lieb, 462 F.2d 1161 (TECA 1972); University of Southern California v. Cost of Living Council, 472 F.2d 1065 (TECA 1972). This policy is particularly appropriate where, as here, the administrative judgment is of a technical nature and no flaw in the exercise of its expertise has been pointed out. It is, therefore, concluded that the Government adequately demonstrated that the proposed increases would have violated the totality of the § 203(b) standards, and that the two adjustments which were permitted, constituted the maximum which were justifiable on that basis.

■■ With respect to the validity of these increases in the light of § 203(c)(3), we find no error in the district court's determination. To support its claim that contractors had raised their bids in anticipation of higher wages, Local 519 submitted affidavits to that effect from two contractors. But the action of two firms in a large industry does not compel the conclusion that their practice is the general rule. Local 519 also submitted 151 affidavits executed by its members on forms prepared by the Union testifying to substantial increases in productivity through the introduction of new methods and materials. It was not an abuse of its discretion for CISC to ignore these self-serving documents. In the absence of an independent evidence of the alleged increased productivity of these workers, the Union failed to satisfy its burden of proving that these wage increases were justified under § 203(c)(3).

The judgment of the District Court is affirmed.

affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial."