**WESTERN STATES MEAT PACKERS ASSOCIATION, INC., Plaintiff-Appellant,**

v.

**Dr. John DUNLOP, Director, Cost of Living Council, et al., Defendants-Appellees.**

**No. 9–8.**

Temporary Emergency Court of Appeals.

Sept. 1, 1973.

**1402**

Merle D. Cohn and Kenneth A. Mac-Donald, Seattle, Wash., for plaintiff-appellant.

Paul T. Michael, Atty., Dept. of Justice, Washington, D. C. (Irving Jaffe, Acting Asst. Atty. Gen., William E. Nelson, Stanley D. Rose, John N. Hanson, Attys., Dept. of Justice, Washington, D. C., with him on the brief), for the Government appellee.

Before CARTER, CHRISTENSEN and ESTES, Judges.

ESTES, Judge.

This is an appeal under Section 211 of the Economic Stabilization Act of 1970, as amended (the Act), by plaintiff, Western States Meat Packers Association, Inc., from an order of the United States District Court for the Western District of Washington denying plaintiff preliminary injunctive relief prohibiting the enforcement of Executive Orders and Cost of Living Council (CLC) temporary meat price ceiling regulations. In addition, the district court has, pursuant to § 211(c) of the Act,[1] certified to this court three constitutional issues.[2]

---

1. Section 211(c) of the Act provides:
"In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. Upon such certification, the Temporary Emergency Court of Appeals shall determine the appropriate manner of disposition which may include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition."

2. "1. Defendants through Executive Orders No. 11723 and 11730 which froze and freeze plaintiff's prices at a level which is insufficient to recover operating costs and a reasonable return upon investment in order to subsidize the beef consuming public with artificially low beef prices 'confiscated' plaintiff's property in violation of the due process clause of the Fifth Amendment to the Constitution of the United States.
"2. Defendants in promulgating their freeze on beef through Executive Orders No. 11723 and 11730 deprived plaintiff of a substantial property interest without according them the notice and hearing re-

On March 29, 1973, the CLC issued Subpart M of its Regulations as "Temporary Meat Price Ceilings," which established ceilings on the prices which could be charged or paid for most meat.

On June 13, 1973, the President issued Executive Order 11723, providing for a comprehensive freeze for a period of 60 days on the prices of all commodities and services offered for sale except the prices for raw agricultural products. On June 15, the CLC promulgated its "Freeze Regulations" (6 C.F.R. Part 140) to implement Executive Order No. 11723.

On July 19, 1973, the President issued Executive Order No. 11730 and the CLC promulgated its "Special Price Rules for Food," effective from July 18 to September 12, 1973 (6 C.F.R. 140.91–140.-99). This Executive Order and these CLC regulations, among other things, lifted the ceilings on prices charged or paid for most meat, except beef, and made it permissible to charge or pay a price for any meat item derived from swine or sheep above the ceiling price for that item so long as that increased price does not exceed an allowable amount calculated pursuant to the regulations. [6 C.F.R. 130.121, 130.127, 130.57D(e)]

To the extent plaintiff challenges the CLC's regulations as being arbitrary and capricious, in excess of its statutory authority, and contrary to § 203(b)(1), (2) and (5) of the Act, plaintiff's claims are rejected in light of our decision in Pacific Coast Meat Jobbers Association v. Cost of Living Council, No.

9–7, 481 F.2d 1388 (T.E.C.A.,1973). Challenges asserting the failure of the CLC to hold adequate hearings and make formal findings were also rejected in that decision. However, none of the claims made by the plaintiffs in *Pacific Coast* was based on constitutional grounds, as that decision specifically noted.

The first two constitutional issues certified to us are directed not at CLC regulations and procedures, but instead mention only Executive Orders 11723 and 11730. However, we will also construe these two issues to be directed at the CLC regulations and actions in implementing and continuing the freeze on beef prices only. [38 F.R. 19347 et seq. (July 19, 1973)][3]

On the first issue certified, plaintiff claims that the freezing of the prices at which plaintiff's members may sell their beef products in effect constitutes a taking of their property without just compensation in violation of the due process clause of the fifth amendment. An otherwise valid governmental control on prices has been held not to be a taking of property prohibited by the fifth amendment. As the Supreme Court noted in discussing administrative orders fixing maximum rents under the Emergency Price Control Act of 1942:

. . . We are not dealing here with a situation which involves a "taking" of property. . . . By § 4(d) of the Act it is provided that "nothing in this Act shall be construed to require any person to sell any commodity or to offer any accom-

quired by the due process clause to the Fifth Amendment to the United States Constitution.

"3. Defendants in singling out plaintiff to operate at a loss in order to subsidize artificially low beef prices, while allowing fish, fowl, pork, sheep, and other non-beef processors and packers to pass on increased costs dollar for dollar to the American consumer invidiously discriminate against plaintiff in violation of the 'imputed' equal protection clause of the Fifth Amendment to the Constitution of the United States."

3. Actually, the district court, in making its oral findings and conclusions from the bench and denying plaintiff's motion for a preliminary injunction, expressly stated, "Plaintiffs have, properly in my opinion, restricted the issues. They admit that we do not face a substantial constitutional question." Later, in discussing procedure for appeal, the district court indicated it would be willing to certify constitutional questions, and then stated, "It was not framed that way here particularly, but I leave it to you gentlemen to decide if you want to carry it out or how you want to carry it out."

modations for rent." There is no requirement that the apartments in question be used for purposes which bring them under the Act. Of course; price control, the same as other forms of regulation, may reduce the value of the property regulated. But, as we have pointed out in the *Hope Natural Gas Co.* case (320 U.S. [591] p. 601 [64 S.Ct. 281, 88 L.Ed. 333]), that does not mean that the regulation is unconstitutional. Mr. Justice Holmes, speaking for the Court, stated in Block v. Hirsh, *supra* [256 U.S. 135] p. 155 [41 S.Ct. 458, p. 459, 65 L.Ed. 865]: "The fact that tangible property is also visible tends to give a rigidity to our conception of our rights in it that we do not attach to others less concretely clothed. But the notion that the former are exempt from the legislative modification required from time to time in civilized life is contradicted not only by the *doctrine of eminent domain*, under which what is taken is paid for, but by that of the police power in its proper sense, under which property rights may be cut down, and to that extent taken, without pay." A member of the class which is regulated may suffer economic losses not shared by others. His property may lose utility and depreciate in value as a consequence of regulation. But that has never been a barrier to the exercise of the police power.

Bowles v. Willingham, 321 U.S. 503, at 517–518, 64 S.Ct. 641 at 648, 88 L.Ed. 892 (1944); *accord*, Wilson v. Brown, 137 F.2d 348 (Emer.Ct.App.1943). Since this court held in *Pacific Coast* that the imposition of the price ceiling on beef was a valid exercise of the regulatory powers vested in the President and CLC by the Act, it is clear that there has been no taking here.

██ The second issue certified is whether defendants' actions in regard to the beef freeze have effectively deprived plaintiffs of a substantial property interest without opportunity for the notice and hearing required by the due process clause of the fifth amendment. Although this court's discussion of this issue in *Pacific Coast* was concerned only with statutory requirements, the court was of the opinion that the CLC's decision not to hold formal public hearings after notice was entirely rational in light of the extensive informal consultations held, the possibility of counter-productive economic effects, and the impracticability due to the emergency confronting the CLC.

In Bowles v. Willingham, 321 U.S. 503, at 519, 64 S.Ct. 641 at 649, 88 L.Ed. 892 (1944), the Supreme Court stated:

It is finally suggested that the Act violates the Fifth Amendment because it makes no provision for a hearing to landlords before the order or regulation fixing rents becomes effective. Obviously, Congress would have been under no necessity to give notice and provide a hearing before it acted, had it decided to fix rents on a national basis the same as it did for the District of Columbia. See 55 Stat. 788. We agree with the Emergency Court of Appeals (Avant v. Bowles, 139 F.2d 702) that Congress need not make that requirement when it delegates the task to an administrative agency. In Bi-Metallic Investment Co. v. State Board, 239 U.S. 441 [36 S.Ct. 141, 60 L.Ed. 372], a suit was brought by a taxpayer and landowner to enjoin a Colorado Board from putting in effect an order which increased the valuation of all taxable property in Denver 40 per cent. Such action, it was alleged, violated the Fourteenth Amendment as the plaintiff was given no opportunity to be heard. Mr. Justice Holmes, speaking for the Court, stated, p. 445 [of 239 U.S., page 142 of 36 S.Ct.]: "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or prop-

erty of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." We need not go so far in the present case. Here Congress has provided for judicial review of the Administrator's action. To be sure, that review comes after the order has been promulgated; and no provision for a stay is made. But as we have held in Yakus v. United States, [321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834] *supra*, that review satisfies the requirements of due process. As stated by Mr. Justice Brandeis for a unanimous Court in Phillips v. Commissioner, 283 U.S. 589, 596–597 [, 51 S.Ct. 608, 611, 75 L.Ed. 1289]: "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Springer v. United States, 102 U.S. 586, 593 [26 L.Ed. 253]; Scottish Union & National Ins. Co. v. Bowland, 196 U.S. 611, 631 [25 S.Ct. 345, 351, 49 L.Ed. 619]. Delay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied."

In United States v. Lieb, 462 F.2d 1161 (T.E.C.A.1972), the plaintiff claimed that imposition of the initial 90-day freeze denied him due process of law because he was unable to obtain an administrative hearing. This court rejected the contention, stating, at 1167: "If OEP had been required to hold administrative hearings on the advisability of the regulations and interpretations it adopted or planned to adopt, the delays encountered by such hearings would have destroyed the program scheduled to be in effect for only 90 days. Procedures were set up for handling requests

for exemptions or exceptions, and Lieb was advised of these procedures. He elected to forego the administrative procedures available to him." [4]

The opinion in *Pacific Coast* also held that the implementation and continuation of the freeze on beef prices was a rational decision based upon the best information available. In United States v. Lieb, 462 F.2d 1161, at 1167–1168 (T.E. C.A.1972), this court also stated:

The Supreme Court, in Richardson v. Belcher, 404 U.S. 78 [92 S.Ct. 254, 30 L.Ed.2d 231] (1971), holds that federal statutes are consistent with the due process clause of the Fifth Amendment if they meet the rational basis test enunciated in Dandridge v. Williams, 397 U.S. 471, 485 [90 S.Ct. 1153, 1161, 25 L.Ed.2d 491] (1970), as follows:

"In the areas of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' "

Accordingly, we reject plaintiff's claims as to this issue.

The third constitutional issue certified is the question whether defendants' decision to discontinue the freeze on other meats but to continue the freeze on beef until September 12, 1973, is such an invidious discrimination

---

4. In this case plaintiff, Western States Meat Packers Association, Inc., has not applied for an exception from the price ceiling with the CLC.

against plaintiff as to deny the equal protection of the laws, as guaranteed by the due process clause of the fifth amendment. Because no state action is involved here, the equal protection clause of the fourteenth amendment is not applicable. The Supreme Court has said, however, that a "discrimination may be so unjustifiable as to be violative of due process." Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). In rejecting contentions that this different treatment for beef was arbitrary and capricious, this court, in *Pacific Coast*, affirmed the finding of the district court that the CLC decision was based on the following legitimate economic considerations. First, it was decided that market pressures were such that the freeze on meat prices would have to be lifted. Second, it was noted that removal of the ceiling on all meat prices would increase the level of prices dramatically, while splitting the relaxing of the ceiling into beef and non-beef steps would lessen this impact. Third, beef prices had been rising much faster than prices on all other meats. Finally, there was evidence of destruction of live poultry, swine, and sheep, portending future shortages of those meats, while beef was not being destroyed or otherwise withdrawn from the production cycle but was, instead, only being withheld from the market.

Moreover, the determination made was not that there should be a permanent or indefinite ceiling on the price of a single type of meat, but rather a determination of the order in which the entire ceiling should be lifted from all meats. Indeed, had it not been for the fact that this appeal has been expedited, the freeze would have expired by its own terms. In view of these factors, we cannot say that it was an invidious discrimination against plaintiff for the defendants to decide to keep the freeze in effect on

beef for two months longer than on other meat products.

The additional argument made here, that in effect it was not rational to continue the freeze against the beef market level occupied by the members of the plaintiff, while leaving prices at the production level uncontrolled, and that the burden of the price control was thus placed solely on those in plaintiff's members' position, must be rejected. The affidavit of Dr. John Dunlop reveals that the members of the CLC took into account the many conflicting factors that involve the entire economy of the country. They were mindful that live cattle and raw agricultural products had been exempted by Executive Order, that the purpose of this exemption was to increase the production of feed grain and cattle, and that controls on the prices of these commodities would defeat this purpose. CLC made an honest attempt to foresee the immediate economic developments, and in some instances apparently was mistaken. As of March 29, 1973, when the meat price ceilings were first imposed, the CLC did not expect the cost of feed grain to rise, but it did rise. Substantial withholding of cattle from the market by producers was not anticipated, but it has occurred. The record demonstrates that CLC had a rational basis for its decision, although it may have made mistakes in predicting economic trends. Mere error in judgment does not destroy the fact that there was a reasonable basis for the decision, and its continuance until September 12, 1973, in view of the short period of time involved and the rapidly changing conditions.

Turning our attention now from consideration of the constitutional issues certified to consideration of the plaintiff's appeal from the denial of preliminary injunctive relief, we find that the record reflects that the evidence in this case is not materially different from that in *Pacific Coast*.[5] Counsel for the

---

5. In discussing the Court's certification of the constitutional questions, the district

court stated that "for the purposes of temporary relief, they [plaintiff's counsel] did

plaintiff has admitted in his own affidavit of August 9, 1973, that the issues and facts of the cases are similar. Many of the affidavits in this case were also offered in *Pacific Coast*. Although it is indicated that some of the member companies of plaintiff association are unable profitably to continue operations due to the temporary price ceiling on

beef, it is not clear that they will suffer irreparable injury.[6] For all of the reasons stated herein and in our opinion in *Pacific Coast*, plaintiff has failed to show itself entitled to the preliminary injunctive relief sought, and the constitutional issues having been determined adversely to plaintiff,[7] the judgment of the district court is affirmed.

not bring these constitutional questions to the court. As a matter of fact, they waived them for that purpose and argued only the statutory instructions [sic] to the question, the standard question, and they have been denied their temporary relief."

6. The plaintiff is an incorporated association, and nothing in the complaint indicates that this is a class action. Plaintiff itself neither buys nor sells meat. Although we

have serious doubts about the standing of the plaintiff, as a "person suffering legal wrong" under the Act, to bring this action, the issue was not pressed below nor decided by the trial court, and we do not decide it here.

7. This is dispositive also of the defendants' motion to dismiss the certification of the constitutional issues and to dismiss the appeal.