CARPENTERS 46 COUNTY
CONFERENCE BOARD et
al., Plaintiffs-Appellants,

v.

The CONSTRUCTION INDUSTRY
STABILIZATION COMMITTEE
et al., Defendants-Appellees.

No. 9–26.

Temporary Emergency Court
of Appeals.

July 31, 1975.

---

638

Victor J. Van Bourg and David A. Rosenfeld of Van Bourg, Allen, Weinberg, Williams & Roger, San Francisco, Cal., for appellants.

William C. White, Atty., Rex E. Lee, Asst. Atty. Gen., Stanley D. Rose, Atty., Dept. of Justice, Washington, D. C., for appellees.

Before CARTER, CHRISTENSEN and ESTES, Judges.

PER CURIAM.

This action was commenced on October 25, 1973, in the District Court for the Northern District of California, as a class action, by plaintiff Carpenters 46 County Conference Board, United Brotherhood of Carpenters and Joiners of America, AFL–CIO [hereinafter Carpenters Board], for itself and on behalf of all affiliated district councils and local unions and on behalf of all working people covered by the relevant collective bargaining agreement with the Associated General Contractors of California, Inc., the Engineering and Grading Contractors Association, and the Northern California Home Builders Conference, known as the "Master Agreement"[1]; plaintiff Pile Drivers, Carpenters, Bridge, Wharf and Dock Builders, Local Union No. 34 of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO [hereinafter Local 34], for itself and on behalf of all working people covered by the "Local 34 Agreement"[2]; two named plaintiff officials of the Carpenters Board; and one named plaintiff official of Local 34. The plaintiffs seek declaratory and injunctive relief that the actions of the Construction Industry Stabilization Committee (CISC)[3] with regard to the reduction of the plaintiffs' wage increases provided for in their collective bargaining agreements were unlawful and unconstitutional and should be enjoined.[4] Plaintiffs' constitutional

1. The Master Agreement was executed on July 14, 1971, by the United Brotherhood of Carpenters and Joiners of America, AFL–CIO, on behalf of its District Councils and Local Unions and was to be effective for wages and benefits paid by the employers under the agreement, from June 15, 1971 through June 15, 1974.

2. The Local 34 Agreement was to be effective over approximately the same time period as the Master Agreement. Since Local 34 agreed to be bound by any determination made as to the Carpenters Board, further discussion will refer only to the Master Agreement.

3. On March 29, 1971, the President exercised the authority conferred on him by the Economic Stabilization Act of 1970 (ESA), 84 Stat. 799 as amended, to stabilize the wages and prices in the construction industry which according to Executive Order 11588 had "tended in recent years to increase at a rate greater than that for the economy as a whole." (36 F.R. 6339, April 3, 1971) The Order created the Construction Industry Stabilization Com-

mittee (CISC) and required all proposed wage and salary increases within the construction industry to be approved by the CISC and the appropriate craft board before being put into effect. For further background on the CISC and its regulations and orders, *see, Associated Gen. Con. of A., Inc., Okl., etc. v. Laborers' Int. U.,* 476 F.2d 1388, 1395–1401 (Em.App. 1973); *United States v. International Bro. of Elec. Wkrs., L. No. 11,* 475 F.2d 1204, 1205–1208 (Em.App.1973).

4. The CISC informed the Craft Board on June 18, 1973, that the 25¢ increase in fringe benefits scheduled to go into effect on June 1, 1973 was not unreasonably inconsistent with the stabilization policies but suggested that the 65¢ wage adjustment scheduled to go into effect on June 16, 1973 be limited to 15¢. Pursuant to the request by the Carpenters Board, a hearing was held before a member of the CISC on August 17, 1973. On December 7, 1973, CISC notified the parties to the Master Agreement that the 65¢ wage increase scheduled for June 16, 1973 was unreasonably in-

challenge of the regulations and orders of the CISC and related agency bodies would nullify the wage-price stabilization program under the Economic Stabilization Act of 1970, Pub.L. 91–379, 84 Stat. 799, as amended (ESA), 12 U.S.C. § 1904 note, to the extent that it was inconsistent with wage increases provided in their collective bargaining agreements. Upon motions for summary judgment filed by each side, the District Court determined all matters in controversy adversely to the plaintiffs except one; and that being a "procedural due process issue" deemed by the court to be substantial, it has been certified to this court pursuant to § 211(c) of the ESA. The District Court stayed its decision on summary judgment pending the resolution of the constitutional issue certified to this court.

We do not reach the question of constitutionality, except to note the tenuous nature of our jurisdiction based upon certification of what appears to be an insubstantial constitutional issue. See *Shapp v. Simon,* 510 F.2d 379 (Em.App. 1975); *National Petroleum Refiners Association v. Dunlop,* 486 F.2d 1388 (Em. App.1973); *District of Columbia v. Little,* 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950). The constitutionality of the ESA and implementing regulations and orders has been consistently upheld against constitutional attacks in a broad range of cases, e. g., wages, *Fry v. United States,* 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975), aff'g 487 F.2d 936 (Em.App.1973); *Local Union No. 11, Int. Bro. of Electrical Wkrs. v. Boldt,* 481 F.2d 1392 (Em.App.1973); *Amalgamated Meat Cutters & Butcher Work. v. Connally,* 337 F.Supp. 737 (D.D.C.1971); rents, *United States v. Lieb,* 462 F.2d 1161 (Em.App.1972); prices, *Western States Meat Packers Ass'n, Inc. v. Dun-*

lop, 482 F.2d 1401 (Em.App.1973); *University of Southern California v. Cost of Living Council,* 472 F.2d 1065 (Em.App. 1972). Plaintiffs would assert that the non-adversary nature of the administrative hearing held by the CISC in their case denied them their constitutional right of "procedural due process." However, this court has previously recognized the important distinction of agency determinations under the ESA from the "usual administrative adjudications, subject to the full panoply of the Administrative Procedure Act . . ." *Plumbers Loc. U. No. 519, etc. v. Construction Ind. Stab. Com.,* 479 F.2d 1052, 1055 (Em.App.1973).[5] In *Western States Meat Packers Ass'n, Inc. v. Dunlop,* 482 F.2d 1401 (Em.App.1973), this court rejected the plaintiffs' claims that the freeze on beef prices by the CLC

"deprived plaintiffs of a substantial property interest without opportunity for the notice and hearing required by the due process clause of the fifth amendment. Although this court's discussion of this issue in *Pacific Coast [Meat Jobbers Ass'n v. C.L.C.,* 481 F.2d 1388 (Em.App.1973)] was concerned only with statutory requirements, the court was of the opinion that the CLC's decision not to hold formal public hearings after notice was entirely rational in light of the extensive informal consultations held, the possibility of counter-productive economic effects, and the impracticability due to the emergency confronting the CLC." (482 F.2d at 1404).

While the instant case does not involve the failure to hold public hearings, the factors considered by this court in *Western States* clearly are relevant in determining the adequacy of the hearing procedures available to parties objecting to the ESA and its regulations.[6] Further,

consistent with its standards for wage stabilization and authorized a 15¢ wage increase effective June 16, 1973. Upon administrative appeal and further review, the CISC found the parties had presented no basis for any modification of the CISC's earlier decision.

**5.** Section 207 of the ESA exempts agency action under the Act from most of the provisions of the Administrative Procedure Act, title 5,

United States Code, including § 556 on the conduct and right of participants in administrative hearings.

**6.** In *University of Southern Cal. v. Cost of Living Council,* 472 F.2d 1065, 1070 (Em.App. 1972), this court stated:

"The Economic Stabilization Act of 19⁻ gave to the President the plenary powe

in settling the constitutionality of the ESA as it applied to state government employees in *Fry v. United States*, 421 U.S. 542, 548, 95 S.Ct. 1792, 1796, 44 L.Ed.2d 363 (1975), the Supreme Court stated: "Congress enacted the Economic Stabilization Act as an emergency measure to counter severe inflation that threatened the national economy."

The question of the mootness of this appeal suggested by the appellees is determinative. This suit was commenced before the expiration date (April 30, 1974) of the ESA. Section 218 of the ESA provided that the "expiration [of the Act] shall not affect any action or pending proceedings, civil or criminal, not finally determined on such date, nor any action or proceeding based upon any act committed prior to May 1, 1974." This saving clause and the general saving statute, 1 U.S.C. § 109, were carefully considered by this court in *United States v. California*, 504 F.2d 750 (Em. App.1974), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2423, 44 L.Ed.2d 684 (1975). This court held, *inter alia*, that a "pending proceeding" which would survive the expiration of the ESA under the saving statutes was a "pending enforcement proceeding" based upon a violation of the Act during its existence.

The case *sub judice*, while pending on the expiration date of the ESA, was not one "*to enforce* the expired statute in relation to violations of it, or of regulations issued under it, occurring before its expiration." *California, supra*, 504 F.2d 750, 754, quoting from *Allen v. Grand Central Aircraft Co.*, 347 U.S. 535, 554–555, 74 S.Ct. 745, 98 L.Ed. 933 (1973). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, at 401, 95 S.Ct. 2330, at 2334, 45 L.Ed.2d 272 (1975), quoting from *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Thus, following the *California, supra,* decision this case presents no justiciable controversy on which the relief sought could be granted, and the case must be dismissed as moot. *Securities & Exch. Com'n v. Medical Com. for Human Rights*, 404 U.S. 403, 407, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

Accordingly, it is ordered that this action is remanded to the district court for dismissal.

So ordered. Rules 23, 25 and 28 of this court.

stabilize prices . . . The right of the Government to apply the freeze to existing contracts, a right which has not been seriously disputed, has been expressly recognized of late in *Amalgamated Meat Cutters & Butcher Workmen v. Connally*, 337 F.Supp. 737 (D.D.C.1971). The fact that payment has been received for an event to be performed in the future does not alter this 'doctrine of impairability.' As in other contexts the date of performance of the 'service' may be given effect as the determinative of the time governing the application of the price ceilings . . . ."

Accord, *DeRieux v. Five Smiths, Inc.*, 499 F.2d 1321 (Em.App.1974), which upheld the constitutionality of the ESA as administered under Executive Order 11615, where attacked as an unconstitutional delegation of authority to the executive branch of the government; an unconstitutional bill of attainder or *ex post facto* law; an unconstitutional taking of property without just compensation; and an unconstitutional deprivation of due process of law.