WENTZ HEATING AND AIR
CONDITIONING COMPANY,
a corporation, Plaintiff,

v.

FEDERAL ENERGY
ADMINISTRATION,
Defendant.

No. Civ. 75–L–92.

United States District Court,
D. Nebraska.

April 16, 1976.

William D. Sutter, Lincoln, Neb., for plaintiff.

Christopher M. Was, Economic Litigation Section, Civ. Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This matter is before the Court on a petition for review of an amended Remedial Order issued by the Federal Energy Administration [FEA] requiring the petitioner to reduce the price charged for No. 5 fuel oil in accordance with FEA price regulations and to refund $12,-007.58 to fifteen specified customers for alleged overcharges in the price of No. 5 fuel oil. The petitioner is Wentz Heating and Air Conditioning Co., a Nebraska corporation, which is in the business of selling fuel oil, including No. 5 fuel oil, to consumers. The FEA has counterclaimed for an injunction enforcing the amended Remedial Order and for the imposition of civil penalties. Jurisdiction is present under §§ 209 and 211 of the Economic Stabilization Act of 1970, as adopted by 15 U.S.C. § 754.

## FINDINGS OF FACT

1) Wentz Heating and Air Conditioning Co., [hereafter referred to as Wentz] is a reseller-retailer of fuel oil, as defined by 10 C.F.R. § 212.31.

2) During an audit and examination in July, 1974, the FEA determined that the prices charged fifteen customers by Wentz for No. 5 fuel oil during the period of November 1, 1973, to May 31, 1974, were in excess of the maximum lawful rate. On September 30, 1974, the FEA issued a Notice of Probable Violation to Wentz concerning these overcharges. Wentz replied to this Notice, and a conference with FEA officials was held in October, 1974.

3) On November 5, 1974, the FEA issued a Remedial Order requiring Wentz to roll back its prices and to refund the excess charges amounting to $12,935.58 to its identifiable customers who were overcharged. Wentz filed a timely appeal of this order, pursuant to 10 C.F.R. § 205.100, et seq., and a conference with FEA officials was held.

4) After this conference the FEA issued an amended Remedial Order on February 6, 1975. This amended Order reflected discounts allowed by Wentz to its customers and reduced the amount to be refunded to $12,007.58.

5) Wentz appealed from this amended Order and was granted a stay of the refund portion of the Order pending disposition of its appeal. The appeal was denied without a hearing on May 15, 1975.

6) The parties have stipulated, and the Court so finds, that the prices charged by Wentz during the time in question were, in fact, in excess of the legal maximum price established by 6 C.F.R. § 150.359 and that the following figures represent the amount of price overcharges during that period:

| Customer: | Overcharge: |
|---|---|
| Lincoln General Hospital | $3,437.77 |
| Stuart Enterprises | 1,052.19 |
| Metro Apartments | 94.38 |
| William Coveney | 100.59 |
| Tecumset Rendering | 36.57 |
| Nebraska Wesleyan University | 2,943.33 |
| Andre Andros | 270.39 |
| President Apartments | 372.75 |
| Umberger Apartments | 70.25 |
| Anderson Building | 753.81 |
| Cornhusker Hotel | 1,833.97 |
| Du Teau | 375.75 |
| Roosevelt Apartments | 177.68 |
| Westminster Presbyterian Church | 294.37 |
| Metropolitan Apartments | 193.78 |
| TOTAL | $12,007.58 |

7) This violation of price regulations for No. 5 fuel oil was unintentional. During the period of the violation, Mr. Charles Craft, president of Wentz, had attempted to find out whether No. 5 fuel oil was covered by the price regulations in effect and, if so, what those price

regulations were. He was unable to do so because the regulations were not widely distributed at that time and because there was considerable confusion in the industry concerning this issue. The compliance officer of the Internal Revenue Service who was assigned to investigate this matter also had initial doubts about the applicability of price regulations to No. 5 fuel oil and he was unable to advise Wentz at the early stages of the investigation.

8) Throughout the administrative process, including the appeals, Wentz was not granted a full-scale, formal, adversary hearing. Rather, the process consisted of informal conferences with federal officials. At all such conferences Wentz was represented by able and experienced counsel and was afforded an opportunity to present its position. Wentz has exhausted its administrative remedies.

### CONCLUSIONS OF LAW

This Court's jurisdiction is quite limited by Section 211 of the Economic Stabilization Act of 1970, as adopted by 15 U.S.C. § 754. It may only declare an agency order invalid if the order was in excess of the agency's authority or was not based on substantial evidence. The petitioner does not seriously contend these grounds are present here. In fact, petitioner has stipulated that the prices charged by Wentz were in excess of the maximum lawful prices and that the government's figures are correct.

Although Wentz admits that it charged excess prices, it raises several constitutional challenges to the administrative procedures. It charges that the regulations and statutes do not provide for constitutionally adequate hearings and that, in fact, it was deprived of a fair and adequate opportunity to be heard, in violation of its rights to procedural due process under the Fifth Amendment. It also charges that it did not have adequate notice of the price regulations, which were published in the Federal Register, and that it is constitutionally unfair to hold petitioner to these

regulations when it had no knowledge of them.

■ Under Section 211, set out as a note to 12 U.S.C.A. § 1904, this Court must certify all "substantial constitutional issues" to the Temporary Emergency Court of Appeals. The initial question is whether the issues presented by Wentz are "substantial." In this context, constitutional issues are not substantial if they are obviously without merit or if previous decisions have foreclosed the issues. *Delaware Valley Apartment House Owners Association v. United States,* 350 F.Supp. 1144, 1150 (E.D.Pa. 1972), *aff'd,* 482 F.2d 1400 (Em.App. 1973).

■ Although the petitioner was not afforded a full-blown, formal, adversary hearing at each stage of the proceedings, there was no deprivation of procedural due process. Procedural due process is a flexible concept which depends upon a balancing of the competing interests involved. *FCC v. WJR Radio Station,* 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949); *Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The procedural rights afforded by the Constitution to a particular person or business must be determined on a case-by-case basis. What is required under one set of circumstances may not be required under other circumstances. On two occasions the Temporary Emergency Court of Appeals has carefully weighed the competing interests involved and upheld the same or similar administrative procedures against allegations that they denied procedural due process. *Carpenters 46 County Conference Committee v. Construction Industry Stabilization Committee,* 522 F.2d 637 (Em.App.1975); *Western States Meat Packers Association, Inc. v. Dunlop,* 482 F.2d 1401 (Em.App. 1973). (*See also Plumbers Local Union 519 v. Construction Industry Stabilization Committee,* 479 F.2d 1052 (Em.App.1973), which held that the Economic Stabilization Act was not subject to the procedural requirements of the Administrative

Procedure Act.) Petitioner's allegations of a denial of procedural due process have been foreclosed by the Temporary Emergency Court of Appeals.

 Although the regulations were published in the Federal Register, Wentz claims it did not have actual knowledge of those regulations and that it is a denial of due process to require it to obey regulations of which it had no knowledge. Although this argument has some visceral appeal, it has been consistently rejected by the courts which have considered it. The price regulations had the force and effect of law and petitioner was charged with notice of them when they were published, regardless of his actual knowledge or any hardship resulting from innocent ignorance. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *United States v. Millsap*, 208 F.Supp. 511 (D.Wyo.1962), *appeal dismissed*, 320 F.2d 911 (10th Cir. 1963). In similar circumstances this rule has been criticized as being too harsh.

> To my mind, it is an absurdity to hold that every farmer who insures his crops knows what the Federal Register contains or even knows that there is such a publication. If he were to peruse this voluminous and dull publication as it is issued from time to time in order to make sure whether anything has been promulgated that affects his rights, he would never need crop insurance, for he would never get time to plant any crops. Nor am I convinced that a reading of technically-worded regulations would enlighten him much in any event.
>
> *Federal Crop Insurance Corp. v. Merrill, supra*, 332 U.S. at 387, 68 S.Ct. at 5, 92 L.Ed. 16 (Jackson, J., dissenting opinion).

The Court is sympathetic to petitioner's plight, but Wentz was bound by the regulations the same as every other business.

 The government has counterclaimed for an injunction under Section 209 of the Economic Stabilization Act to enforce its Remedial Order and for civil penalties under Section 208 of that Act. The FEA, having issued a proper Order, is entitled to have that Order enforced. The Court, however, declines to assess civil penalties. No purpose would be served by imposing civil sanctions. The evidence is clear that Wentz did not knowingly and deliberately violate the law in order to obtain unjust profits. The profits resulting from the price violations were received through inadvertence, and justice will be served if those excess profits are returned to the customers. Nor should Wentz be penalized for asserting its rights to administrative hearings and appeals provided for by the statutes and regulations.

In sum, this Court will not certify the constitutional issues raised by Wentz to the Temporary Emergency Court of Appeals because they are not substantial. Wentz, having exhausted its administrative remedies, has had its day in court and now must comply with the applicable pricing regulations and make restitution for its excess profits.

A separate order will be entered enforcing the amended Remedial Order issued by the FEA.