The State of Ohio, ex rel. Ervin, et al., *v.* Gilligan et al.

[Cite as State, ex rel. Ervin, v. Gilligan
(1973), 35 Ohio App. 2d 84.]

(No. 72AP-47—Decided May 29, 1973.)

*Mr. Leonard S. Sigall*, for relators.
*Mr. William J. Brown*, Attorney General, *Mr. C. Raymond Marvin* and *Mr. Robert B. Meany*, for respondents.
*Mr. Stephen R. Pickard*, United States Department of Justice, for intervenor-respondent United States of America.

Strausbaugh, J. This matter is before us upon relators' complaint, filed February 10, 1972, and set down for oral hearing May 16, 1972, for the issuance of a peremp-

tory and a final writ of mandamus. At the oral hearing the cause was continued for one month, until June 16, 1972, for the filing of stipulations of facts and the briefs. Thereafter, by reason of inaction of the parties, this court gave notice that unless dispositive action be taken before March 30, 1973, under our court Rule 11, section 14, the cause would be dismissed for want of prosecution. Thereafter, at the request of the parties, a conference was held between the parties and the court wherein it was agreed that the parties would submit briefs, and that a reply brief would be submitted five days thereafter. At that time, on April 6, 1973, all evidence being stipulated, this court requested that the parties direct their attention specifically to the following two questions: (1) What provision of the Economic Stabilization Act of 1970 makes the act applicable to salaries paid by a sovereign state to officers and employees of state government established by legislative act? (2) What provisions of executive order 11695 accomplishes that purpose?

Ancillary to those questions, assuming an affirmative answer, we asked that two other questions be briefed: (1) Does the Tenth Amendment to the United States Constitution preclude the federal government from regulating the salaries of officers and employees of state government? and (2) Is there any improper delegation of authority in executive order 11695? Instead of filing a brief as requested, the attorney for the United States of America, on April 19, 1973, filed, in this court, a copy of a petition filed with the United States District Court for the Southern District of Ohio, Eastern Division, for the removal of this case to that court.

The Economic Stabilization Act of 1970, 12 U. S. C. 1904, supplement I, provides, in paragraph 211, Judicial review:

"(a) The district courts of the United States shall have exclusive original jurisdiction of all cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection or in

subsection (h) of this section affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court. If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of agency action under this title, the case shall be subject to removal by either party to a district court of the United States in accordance with the applicable provisions of Chapter 89 of Title 28, United States Code.''

Chapter 89 of Title 28, United States Code, provides:

''§1446. Procedure for removal. (a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all process, pleadings and orders served upon him or them in such action.

''(b) The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

''If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

''(c) The petition for removal of a criminal prosecution may be filed at any time before trial.''

Under the above procedure for removal, the petition filed by the attorney for the United States on April 19, 1973, was a nullity for failure to be timely filed, the case previously having been submitted to this court for a determination of the merits upon the stipulated facts. A petition for removal cannot be made between the time of trial and decision.

Although not controlling, a review of the legislative history of P. L. 92-210, as contained in 2 U. S. Cong. & Adm. News, p. 2292 (1971) is helpful. Under "Judicial Review," at page 2292, we note the following:

"The judicial review provision has been written with several important principles in mind: (1) speed and consistency of decisions in cases arising under the Act, (2) avoidance of any breaks or stays in the operation of the Stabilization Program, and (3) relief for particular persons aggrieved by the operation of the program.

"Exclusive original jurisdiction over cases and controversies arising under the Act or under regulations or orders issued under the Act shall be in the Federal district courts. These cases may be brought regardless of the amount in controversy. It is made explicit, however, that with respect to any case or controversy brought in a court of competent jurisdiction, e. g., a State court, nothing shall prevent a defendant from raising a defense (other than a defense involving constitutionality of the Act or the validity of a regulation or order issued under the Act). If the defense is simply one concerning the applicability of a regulation to a party such case would stay in the State court, the issue of the applicability could be decided in that court, and appeals would proceed through the procedure established for that court. If either of the two issues mentioned above, constitutionality of the Act or validity of a regulation or order issued under the Act, are raised, no court, other than a Federal district court, has jurisdiction to act upon a case involving these issues. Such case should be subject to a motion to dismiss or similar motion. If it is so dismissed, either party to the action may move to remove the case to Federal district court for further ac-

tion. This removal would be pursuant to the existing removal statutes in Chapter 89 of Title 28 of the United States Code.''

Again, at page 2294, we find the following:

''Finally, the provisions of this section 211 apply to actions pending in any court, Federal or State, on the date of enactment of this section in which no final order or judgment has been rendered. It is understood by the Committee that most of the cases now in State courts involve the applicability of regulations to particular pay situations. Such cases, under this section, would remain in the State court system.''

We find, therefore, under paragraph 211 of the Economic Stabilization Act of 1970, that since no defense based upon the constitutionality of Title II, Cost of Living Stabilization, or the validity of action taken by any agency under this title has been raised, the power of the Ohio courts and the original jurisdiction of this court has not been affected in considering, hearing and determining the issues herein. Furthermore, the procedure relating to removal not having been properly followed under 28 U. S. C. Chapter 89, this court will proceed to decide the case. The law being so explicit, except for the purpose of achieving further delay, it is difficult to understand the purpose for the filing of the petition for removal.

The issue presented is whether state officials can refuse to obey state law.

An examination of the complaint and brief of relators, in mandamus, indicates that nowhere do they challenge the constitutionality of any action taken under the Economic Stabilization Act of 1970. Instead, relators claim that executive order 11695 abolished the pay board, thereby ending mandatory control under Phase II. In addition, relators claim that the act never specifically included state employees, which they claim makes it ''now absolutely clear that at the present time there exists no mandatory wage control over the wages of state employees.'' Relators further claim that Section 3(d) (ii) of executive order number 11695 refers to a ''prospective increase in prices, rents,

wages or salaries under the terms of a contract * * *'' and that the wages under consideration here do not arise under the terms of a *contract*. Relators further contend that the pay bill, enacted in January 1972, was a liability incurred prior to the effective date of executive order 11695 and, therefore, not a retroactive increase in wages or salaries.

Article I, Section 8 of the Constitution of the United States provides:

''The Congress shall have Power to * * * provide for the * * * general Welfare of the United States * * *.

''* * *

''To regulate Commerce with foreign Nations, and among the several States * * *.

''* * *

''To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.''

The 10th Amendment provides:

''The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.''

A valid inquiry could be made regarding the nature of the power granted to the United States Congress or the executive branch of the United States Government to regulate the wages and salaries which a state can pay its employees. However, we need not face that problem here because we find no provision whereby Congress in its enactment, or the executive order issued thereunder specifically or expressly referred to employees of state or local governments.

If Congress had intended to make the Act apply to state employees, the Act would have so stated.

Again referring to the legislative history as contained in 2 U. S. Cong. & Adm. News, *supra* at 2286:

''Another consideration was whether the Committee should exempt from the Act all firms below a certain size and wage contracts applying to employee groups below a

certain size as well as all firms and future wage contracts of those whose prices or wage increases in the past year have been below the guidelines which have thus far been established by the Pay Board and the Price Commission. Specific exemptions which were considered included:

"* * *

"(D) Pay adjustments which apply to or affect employees of State or local governments * * *.

"The Committee agreed that there may be many firms and employees in these categories which have not contributed to inflationary prices and wages. However, it was agreed also that such exemptions could lead to abuses which could not be controlled without Congressional action repealing the exemptions. Moreover, the Committee included in its bill the requirement that standards to serve as a guide for determining levels of wages, salaries, prices, rents, interest rates, corporate dividends, and similar tranfers shall be generally fair and equitable and call for generally comparable sacrifices. The granting of broad exemptions from the legislation could make it impossible for the administering agencies to meet these criteria. The Committee, therefore, did not exempt these specific segments of the economy from the Act."

Although, the aforesaid congressional committee considered specifically exempting pay adjustments which apply to or affect employees of state governments, for certain reasons it did not do so. On the other hand, there is no indication that the committee even *considered* specifically *including* this category of employees.

On April 18, 1973, the United States Supreme Court held, in Case 71-1021, *Employees of The Department of Public Health and Welfare, State of Missouri et al.,* v. *Department of Public Health and Welfare, State of Missouri et al.,* reported in its slip opinion and in 41 U.S.L.W. 4493, that the extension of the Fair Labor Standards Act to include state employees working in schools and hospitals does not authorize a suit by Missouri employees, in federal district court, for overtime pay due them under Section 2116(b), since the Act does not deprive Missouri of

its Eleventh Amendment immunity. Justice Douglas, speaking for the court, said at page 6 of its opinion, 41 U.S.L.W. at 4495:

"Where employees in state institutions, not conducted for profit, have such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised, Congress can act. And when Congress does act, it may place new or even enormous fiscal burdens on the States. *Congress acting responsibly would not be presumed to take such action silently. * * *"* (Emphasis added.)

Here, in the absence of express direction that the Act applies to state employees, there is the presumption that Congress and the executive branch intended that the Act *not* apply. Else, as Justice Douglas said: "Congress * * * would not be presumed to take such action silently."

The action taken by the 109th General Assembly of the state of Ohio in Amended Substitute Senate Bill 147 was a legislative act by a sovereign state. In the absence of an express direction by Congress, or the executive branch acting under Congressional authority, such state legislative action cannot be controlled. For the foregoing reasons, a final writ of mandamus shall be issued directing respondents to effectuate Amended Substitute Senate Bill 147.

*Writ allowed.*

TROOP, P. J., and WHITESIDE, J., concur.