252

[The State, ex rel.] Fry, *v.* Ferguson, Auditor of State, et al.
The State, ex rel. Boehm, *v.* Legatt, Treasurer, Ohio State University, et al.
The State, ex rel. Kaiser, *v.* Ferguson, Auditor of State, et al.

(Nos. 72-102, 72-194 and 72-233—Decided June 20, 1973.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman, Mr. John A. Brown* and *Mr. Jerry L. Riseling,* for relators.

*Mr. William J. Brown,* attorney general, *Mr. Robert B. Meany, Messrs. Vorys, Sater, Seymour & Pease, Mr. Duke W. Thomas* and *Mr. Jacob E. Davis, II,* for respondents.

O'Neill, C. J. Relators contend, and respondents admit, that the laws of Ohio impose a clear legal duty upon the respondents to pay relators the full salary which they demand in this action.

Respondents, however, argue that they are unable to comply with the Ohio law because "the law of Ohio has been superseded by federal law * * *." The federal law to which respondents refer is the Economic Stabilization Act of 1970, as amended. Pub. L. No. 91-379, 84 Stat. 799; Pub. L. No. 91-588, 84 Stat. 1468; Pub. L. No. 92-8, 85 Stat. 13; Pub. L. No. 92-15, 85 Stat. 38; Pub. L. No. 92-210, 85 Stat. 743.

Section 203(a) of that Act authorizes the President "* * * to issue such orders and regulations as he may deem appropriate to stabilize prices, rents, wages, and salaries at levels not less than those prevailing on May 25, 1970 * * *."

On October 16, 1971, the President established a Pay Board "* * * composed of fifteen members" which "* * * shall perform such functions with respect to the stabilization of wages and salaries as the [Cost of Living] Council delegates to the Board." Exec. Order No. 11,627, 3 C. F. R. 587 (Supp. 1972). Following that executive order, the Pay Board adopted regulations concerned, *inter alia*, with "pay stabilization."

Section 201.10 of those regulations, in pertinent part, provided:

"Effective on and after November 14, 1971, the general wage and salary standard (hereinafter referred to as the 'standard') is established as 5.5 percent. The standard shall apply to any wage and salary increase payable with respect to an appropriate employee unit pursuant to an employment contract entered into or modified on or after November 14, 1971, or to a pay practice established, modified or administered with discretion on or after November 14, 1971. Except as otherwise provided in the Regulations under this title or by decision of the Pay Board, the standard shall be used to compute the maximum permissible wage and salary increase." 6 C. F. R. 46 (Supp. 1972).

Also, Section 101.28 of the regulations of the Cost of Living Council provided:

" * * * Approval, however, must be granted by the Pay Board for any pay adjustment in excess of 5.5 percent which affects the employees of state and local governments." 6 C. F. R. 7 (Supp. 1972).

On January 20, 1972, the Governor of Ohio signed into law S. B. No. 147, amending R. C. 143.10(A), which provided pay increases for classified state employees retroactive to January 1, 1972. At that time the above cited regulations of the Pay Board and Cost of Living Council were in effect.

The pay increase provided through the amendment to R. C. 143.10(A) exceeded the 5.5 percent standard established by the Cost of Living Council and the Pay Board. For that reason, respondents sought Pay Board approval to pay the salaries established in R. C. 143.10(A). The Pay Board, by its Chairman, George H. Boldt, ordered, on March 10, 1972, that:

"* * * The applicant is prohibited from making payment of the wage and salary increase until the Chairman determines that the increase to be paid does not exceed the limitations of subsections 201.11(a) (3) (iii) and (b) of the regulations.¹ The applicant may submit and the Chairman will approve payment of a wage and salary increase up to the amount submitted to the Board which is 'placed in effect no earlier than March 17, 1972.' * * * The permissible rate for wage and salary increases to take effect during the wage year commencing November 14, 1972 shall be reduced to the extent that any wage and salary increases paid after March 17, 1972 exceed seven percent computed pursuant to the policies and regulations of the Board."

Ostensibly as a result of Chairman Boldt's directive, respondents failed to pay relators their full statutory salaries prior to March 17, 1972.

These cases present difficult and sensitive questions

¹The referred to subsections provided for a maximum permissible annual aggregate wage and salary increase not to exceed 7 percent.

respecting the jurisdictions of the state and federal governments to regulate salaries of state employees. Those questions are rendered all the more difficult where, as here, the law of one jurisdiction is clear and unequivocal, while the law of the other jurisdiction is not.

The law of Ohio plainly imposes upon respondents the duty to pay relators at the rates provided in R. C. 143.10 (A). See R. C. 115.35, 113.07 and 143.39. The Economic Stabilization Act of 1970, to the contrary, does not clearly authorize the regulation of state employees' salaries. Nowhere in that Act, or its various amendments, are state employees specifically included for the purpose of salary regulation, nor is this court aware of a decision of any other court so applying that Act to state employees.[2]

Therefore, the question presented here is whether a federal administrative body may lawfully assert jurisdiction over the salaries of state employees without clear authorization from the Congress. Stated another way, the question is whether a federal administrative body may use its general regulatory and rule-making powers to prevent enforcement of state statutes establishing the salaries of state employees where the Congress has failed to specifically authorize such prevention.

This court's view of the Constitution of the United States and decisions of the United States Supreme Court interpreting that document, both of which this court is bound to follow, indicate that a federal administrative body lacks jurisdiction to prevent enforcement of otherwise valid state statutes establishing the compensation for classified state employees in the absence of clear authorization from the Congress acting under a specific power granted by the Constitution.

As the Supreme Court noted in *Parker* v. *Brown* (1943), 317 U. S. 341, 351:

" * * * In a dual system of government in which, un-

---

[2]Federal employees' salaries are, for the most part, specifically exempted from regulation under the rules of the Cost of Living Council. 6 C. F. R. Sections 101.31 and 101.35 (Supp. 1972).

der the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress."

See, also, *California* v. *Zook* (1949), 336 U. S. 725, 733, where the Supreme Court stated that " * * *normally congressional purpose to displace local laws must be clearly manifested"; and *Penn Dairies* v. *Milk Control Comm.* (1943), 318 U. S. 261, 275, where the Supreme Court stated that "* * * An expressed purpose of Congress to set aside statutes of the states regulating their internal affairs is not lightly to be inferred and ought not to be implied where the legislative command, read in light of its history, remains ambiguous."

For the foregoing reasons, this court holds that respondents erred in following the directives of the Pay Board. This was in contravention of a clear legal duty under state law to pay relators at the rates provided in R. C. 143.10(A).

Respondents argue that these actions should be dismissed for failure by relators to join the Pay Board and Cost of Living Council as parties. Respondents assert that, otherwise, they will be " * * * subject to a substantial risk of either being enjoined, fined, or both should they be ordered by this court to make payment of the wage increases."

Under the circumstances of these cases, it is this court's view that the federal law regulating the pay of state employees does not supersede the state statute. Therefore, it is unnecessary to join any federal agencies as parties.

The writs of mandamus are allowed.

*Writs allowed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.