**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**The STATE OF OHIO et al.,**
**Defendants-Appellees.**

**No. 6–2.**

Temporary Emergency Court of Appeals.

Oct. 25, 1973.

Paul T. Michael, Washington, D. C. (Irving Jaffe, Acting Asst. Atty. Gen., William E. Nelson, Stanley D. Rose, William C. White, Dept. of Justice, Washington, D. C., on the brief), for appellant.

Robert B. Meany, Asst. Atty. Gen. (William J. Brown, Atty. Gen. on the brief), for appellee, State of Ohio.

John A. Brown, Lucas, Prendergast, Albright, Gibson, Brown & Newman, Columbus, Ohio, for appellee, Successful Relators, Ernest Fry and Thelma Boehm in Supreme Court of Ohio.

Jerry L. Riseling, Columbus, Ohio, for appellee, Jesse T. Kaiser.

Stephen S. Boynton, McIntosh & Boynton, Washington, D. C., for amicus curiae, Governmental Employees.

Leonard S. Sigall, Reynoldsburg, Ohio, for Successful Relators, James C. Ervin,
and others in the Tenth District Court of Appeals.

Before TAMM, Chief Judge, and VAN OOSTERHOUT and HASTINGS, Judges.

VAN OOSTERHOUT, Judge.

This case has been certified to this court for appropriate proceedings in accordance with § 211(c) of the Economic Stabilization Act as amended [1], hereinafter called the Act, by the United States District Court for the Southern District of Ohio. The certification was filed in this court on July 3, 1973.

The issue certified is whether the Act "authorizes the Pay Board and other administrative machinery created by said Act and the executive orders and regulations thereunder, to control the salaries of employees of the State of Ohio in a manner which is in derogation of Senate Bill 147, Section 143.10(A), Ohio Revised Code. [Hereinafter called Pay Bill]."

This action was commenced in the United States District Court by the Government pursuant to §§ 209 and 211 of the Act. The Government seeks a permanent injunction to prevent the State of Ohio from violating the Act and Executive Order 11695 by paying wages and salaries provided by the Ohio Pay Bill to State employees in excess of the amount permitted by the Pay Board Order of March 10, 1973. The certification is based upon the trial court's determination that a substantial constitutional issue is presented.

Section 211(c) provides:

In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. Upon such certification, the Temporary Emergency Court of Appeals shall deter-

---

1. P.L. 91–379, August 15, 1970, as amended by P.L. 93–28, April 30, 1973, and P.L. 92–210, December 22, 1971.

mine the appropriate manner of disposition which may include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition.

■ The determination of whether appropriate action by this court should be limited to consideration of the constitutional issue certified or whether all issues presented by the litigation should be resolved by this court must be made upon a case-to-case basis. Consideration must be given to the fact that this court is not well equipped to conduct an extensive evidentiary hearing in event such hearing is required, and the fact that the time of three judges living in scattered parts of the country would be consumed in conducting such hearing.

In our present case, all of the record before the trial court is before us. In addition all parties except James C. Ervin, et al., relators in State ex rel. Ervin v. Gilligan, et al., in the Court of Appeals for Franklin County, Ohio, have entered into and filed with us an agreed statement of facts. Ervin, et al., state in their brief that they agree with the statement of facts set forth in the briefs of the other appellees. Thus it appears that all matters of fact are before us and that no dispute exists as to the basic material facts. Under such circumstances, it is appropriate for us under § 211(c) to hear and dispose of all issues presented by this litigation.

This court has granted plaintiff's motion for an injunction pending final disposition of this case.

The issues here presented may be summarized as follows:

1. Did Congress intend to include the regulation of wages and salaries of State and local government employees within the coverage of the Act.

2. Does Congress under the Commerce Clause of the Constitution have power to regulate State and local government salaries in light of State sovereignty and the Tenth Amendment.

3. Did Congress have a rational basis for regulating the salaries of State employees.

For the reasons hereinafter set forth, we answer all of such questions in the affirmative and grant the Government the injunctive relief it seeks.

The appellees Ervin, et al., alone raise the issue that the judgment of the Franklin County, Ohio, Court of Appeals in State of Ohio ex rel. Ervin v. Gilligan, 35 Ohio App.2d 84, 300 N.E.2d 225 (1973), holds that Congress did not intend the Act to be applicable to the State employees, barring the Government from pursuing this action under the doctrine of res judicata. We reject such contention for the reasons hereinafter stated.

## BACKGROUND FACTS.

The Pay Bill Act passed by the Ohio General Assembly became effective on January 20, 1972, upon being signed by the Governor. The bill provides for wage and salary increases for State employees by way of salary adjustments, reclassifications, and step increases amounting to an average increase of 10.6% for all employees affected by the bill. Approximately 65,000 employees of the State, the State University and the County Welfare Departments were granted the increase here involved, effective for the pay period beginning with the one that included January 1, 1972.

On February 10, 1972, the case of State of Ohio ex rel. Ervin v. Gilligan was filed in the Franklin County Court of Appeals seeking a writ of mandamus requiring Ohio officials to pay the salary increases provided for in the Pay Bill. Such relief was granted by a decision handed down on May 29, 1973, reported at 35 Ohio App.2d 84, 300 N.E.2d 225.

The State of Ohio filed an application with the Pay Board for permission to pay salary increases provided in the Pay

Bill. An evidentiary hearing was afforded. The Pay Board by decision and order of March 10, 1972, denied the State's application for exception to the extent the requested increase was in excess of 7% for the current year. The State filed a petition for reconsideration which was denied. Additional requests for authority to pay the remaining amount of the salary increases provided by the Pay Bill and for reconsideration were denied.

On June 20, 1973, the Supreme Court of Ohio in the consolidated cases of Fry v. Ferguson, State ex rel. Boehm v. Legatt, and State ex rel. Kaiser v. Ferguson, 34 Ohio St.2d 252, 298 N.E.2d 129, determined that the state officials must pay the entire salary increases provided by the Pay Bill. The Government was not a party to that action. The decision is based on the court's determination that Congress had not authorized the regulation of State salaries and wages.

It is agreed that the salary increases involved in this litigation are those for work performed between the pay period that included January 1, 1972, and March 1972, and that pursuant to Pay Board Order of March 10, 1972, State employees had been receiving the total salary increases provided by the Pay Bill since March of 1972.[2] Approximately $10.5 million is involved in the salary increases here involved and funds have been appropriated and encumbered pending payment. In addition, approximately five million dollars in wage and salary increases which have not been paid to State University and County Welfare Department employees is involved.

## STATUTORY CONSTRUCTION ISSUE.

■ The State urges that Congress did not by the Economic Stabilization Act intend to authorize control over State wage and salary practices. Reliance is placed on the decision of the Ohio Supreme Court in State v. Ferguson, *supra*. In that case, the Ohio court held that a federal administrative body lacks jurisdiction to prevent enforcement of a State statute establishing the rate of compensation of State employees in the absence of a specific statutory grant of such power. The State relies on Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and California v. Zook, 336 U.S. 725, 733, 69 S.Ct. 841, 93 L.Ed. 1005 (1949), to support its contention. Reliance on such cases is misplaced. They did not go to the extent of holding that preemption of a field constitutionally authorized can be accomplished only by an express statement that the law applies to states. It is quite true, as stated in the cases relied upon, that preemption is not to be lightly inferred. Moreover, California v. Zook makes mention of lack of supporting legislative history.

The contention here urged by Ohio was rejected in Case v. Bowles, 327 U.S. 92, 99, 66 S.Ct. 438, 442, 90 L.Ed. 552 (1946), the Court holding:

> The argument that the Act should not be construed so as to include a state within the enumerated list made subject to price regulation, rests largely on the premise that Congress does not ordinarily attempt to regulate state activities and that we should not infer such an intention in the absence of

---

2. The Pay Board in its March 10, 1972, order at paragraph 7 states: "The payment of the wage and salary increase submitted to the Board for approval would, if paid on and after March 17, 1972, result in the same aggregate payments as a 7 percent increase paid for the full wage year."
   In its order, the Board holds: "[I]t is ordered that the application for an exception is denied to the extent that the requested wage and salary increase is in excess of seven percent (7%) for the current wage year computed pursuant to the policies and regulations of the Pay Board. . . . The applicant may submit and the Chairman will approve payment of a wage and salary increase up to the amount submitted to the Board which is placed in effect no earlier than March 17, 1972."

plain and unequivocal language. Petitioner presses this contention so far as to urge us to accept as a general principle that unless Congress actually uses the word "state", courts should not construe regulatory enactments as applicable to the states. This Court has previously rejected similar arguments, and we cannot accept such an argument now.

In United States v. California, 297 U.S. 175, 186, 56 S.Ct 421, 425, 80 L.Ed. 567 (1936), the Court holds:

Respondent invokes the canon of construction that a sovereign is presumptively not intended to be bound by its own statute unless named in it, see Guarantee Title & Trust Co. v. Title Guaranty Co., 224 U.S. 152, [32 S. Ct. 457, 56 L.Ed. 706]; United States v. Herron, 20 Wall. 251, [22 L.Ed. 275]; In re Fowble, 213 F. 676. This rule has its historical basis in the English doctrine that the Crown is unaffected by acts of Parliament not specifically directed against it. United States v. Herron, supra, [20 Wall. at 255]; Dollar Savings Bank v. United States, 19 Wall. 227, 239, [22 L.Ed. 80.] The presumption is an aid to consistent construction of statutes of the enacting sovereign when their purpose is in doubt, but it does not require that the aim of a statute fairly to be inferred be disregarded because not explicitly stated. . . .

In Northern States Power Co. v. Minnesota, 447 F.2d 1143, 1147–48 (8th Cir. 1971), aff'd per curiam, 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972), the Eighth Circuit held that the federal government had preempted the field of regulating leaks of radioactive effluents of nuclear power plants. No express statement of preemption was contained in the legislation. The court held that federal preemption could be implied and listed the key factors bearing on the intention of Congress to preempt as follows:

. . . even where Congress has not expressly prohibited dual regulation nor unequivocally declared its exclusionary exercise of authority over a particular subject matter, federal pre-emption may be implied. . . . Key factors in the determination of whether Congress has, by implication, preempted a particular area so as to preclude state attempts at dual regulation include, *inter alia*: (1) the aim and intent of Congress as revealed by the statute itself and its legislative history. . . . (2) the pervasiveness of the federal regulatory scheme as authorized and directed by the legislation and as carried into effect by the federal administrative agency . . . (3) the nature of the subject matter regulated and whether it is one which demands "exclusive federal regulation in order to achieve uniformity vital to national interests."

. . . (4) "whether under the circumstances of [a] particular case [state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Citations omitted) Id. at 1146–1147.

It is quite true that the Economic Stabilization Act does not in express language state that it applies to the States. On the other hand, there is nothing in the statute which indicates that its provisions shall not apply to the States. The extensive legislative history of the Act unequivocally reveals that Congress intended the Act and its salary and wage provisions to apply to State and local governments. The most significant evidence of such intent is that Senator Proxmire on the floor of the Senate offered an amendment to exempt the salaries of State and local government employees from the operation of the Act. Such amendment was debated and defeated by a vote of 56 to 35.[3]

The discussion of the bill in the Senate and House committees considering

3. 117 Congressional Record 43.673, 43.677.

the bill reflects that the committees considered it necessary to cover State employees' salaries by the Act and that it was their clear intention to do so.[4]

The stabilization agencies have uniformly interpreted the Act to include States within its scope. The interpretation of statutes by the administrative agency responsible for their implementation is entitled to great weight. University of Southern California v. Cost of Living Council, 472 F.2d 1065, 1068 (Em.App.1972). It is clear from the Act and its legislative history that Congress intended the Act to apply to wages and salaries paid State and local government officials and employees. Compliance with both the State law increasing salaries and wages and the Stabilization Act is impossible. Thus, if the government has constitutional power to regulate the areas here involved, the federal Act controls under the doctrine of preemption.

## CONSTITUTIONAL ISSUES.

■ The power of Congress to impose economic controls over compensation paid State and local government employees is based upon the Commerce Clause. In Murphy v. O'Brien, 485 F.2d 671 (Em.App.1973), this court was confronted with the contention that State sovereignty and the rights reserved to the States by the Tenth Amendment precludes Congress in the exercise of its power under the Commerce Clause from authorizing under the Economic Stabili-

zation Act the power to regulate charges for services made by the State of Rhode Island. In that case, the State statute imposed vehicle parking charges on State owned beaches where no such charge had been made prior to the price freeze period. We there held:

Otherwise valid federal legislation, e. g., the Economic Stabilization Act, which incidentally interferes with state affairs has in recent times been uniformly upheld by the Supreme Court. Maryland v. Wirtz, 392 U.S. 183, [88 S.Ct. 2017, 20 L.Ed.2d 1020] (1968); Case v. Bowles, 327 U.S. 92, [66 S.Ct. 438, 90 L.Ed. 552] (1946); New York v. United States, 326 U.S. 572, [66 S.Ct. 310, 90 L.Ed. 326] (1946); United States v. California, 297 U.S. 175, [56 S.Ct. 421, 80 L.Ed. 567] (1936) . . . . Id. at 674.

Judge Hastings, speaking for this court, clearly sets out the reasoning and the authority upon which our decision is based. What is said in that case equally applies to our present case.

Whatever doubt may have existed with respect to the power of Congress under the Commerce Clause to regulate State activities under appropriate circumstances is resolved by Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). In that case, the Fair Labor Standards Act as amended was applied to the States and the States were required to conform to the minimum wage standards and overtime provisions of the Act with respect to em-

4. To set out the pertinent legislative history, much of which is set out in the Government's brief and appendix, would unduly extend this opinion. We note that the Senate committee specifically stated in its report on the Bill that it had rejected a number of proposed exemptions, including pay adjustments which apply to employees of State and local governments. Senate Report No. 92-507; 2 U.S.Code Cong. & Admin.News, p. 2286, 92d Cong., 1st Sess. 1971.

In the House hearing, Secretary Connally, then chairman of the Cost of Living Council, in response to an inquiry by Representative Gonzalez as to whether State and local government employees were exempted, replied:

With respect to State and local governments, let me simply say that I don't think there is any question but that where Congress enacts legislation of this type it certainly is applicable to State and local governments. And it seems to me you can't equitably impose a wage-price freeze, which we are in the midst of now, on the American economy and exempt State and local employees simply because State government, local governments have increased enormously both in terms of numbers of people and in terms of dollars.

Hearings on H.R. 11309, 92d Cong., 1st Sess., parts 1 & 2, page 342.

ployees of the hospitals and schools operated by the State. The Court, after determining the operations of the hospitals and the schools affect commerce, holds:

> But while the commerce power has limits, valid general regulations of commerce do not cease to be regulations of commerce because a State is involved. If a State is engaging in economic activities that are validly regulated by the Federal Government when engaged in by private persons, the State too may be forced to conform its activities to federal regulation. This was settled by the unanimous decision in United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567. . . . 392 U.S. at 196–197, 88 S.Ct. at 2024.

The Court quotes from United States v. California the following:

> "[W]e look to the activities in which the states have traditionally engaged as marking the boundary of the restriction upon the federal taxing power. But there is no such limitation upon the plenary power to regulate commerce. The state can no more deny the power if its exercise has been authorized by Congress than can an individual." 297 U.S. at 183–185, 56 S.Ct. at 424 (citations omitted). Id. at 198, 88 S.Ct. at 2025.

and then goes on to hold:

> The principle of United States v. California is controlling here. Appellants' argument that the statute involved there was somewhat more directly and obviously a regulation of "commerce," and that the state activity involved there was less central to state sovereignty, misses the mark. This Court has examined and will continue to examine federal statutes to determine whether there is a rational basis for regarding them as regulations of commerce among the States. But it will not carve up the commerce power to protect enterprises indistinguishable in their effect on commerce from private businesses, simply because those enterprises happen to be run by the State for the benefit of their citizens. Id.

The State argues that if employees' salaries and wages can be controlled, then all State activities can be controlled. A similar contention was answered and rejected in Maryland v. Wirtz as follows:

> The Act establishes only a minimum wage and a maximum limit of hours unless overtime wages are paid, and does not otherwise affect the way in which school and hospital duties are performed. Thus appellants' characterization of the question in this case as whether Congress may, under the guise of the commerce power, tell the States how to perform medical and educational functions is not factually accurate. . . . 392 U.S. at 193, 88 S.Ct. at 2022.

The Government concedes in its brief that the Commerce Clause does not give Congress the power to regulate all State activities but that such power exists when Congress has a rational basis to conclude that the regulated State activities substantially affect commerce. As stated in New York v. United States, 326 U.S. 572, 583, 66 S.Ct. 310, 314, 90 L.Ed.2d 326 (1946):

> The process of Constitutional adjudication does not thrive on conjuring up horrible possibilities that never happen in the real world and devising doctrines sufficiently comprehensive in detail to cover the remotest contingency. Nor need we go beyond what is required for a reasoned disposition of the kind of controversy now before the Court. . . .

The impact of the extension of the Fair Labor Standards Act to the States appears to be greater than the impact of the Act under consideration. The wage increases involved in Wirtz remain in effect indefinitely and until the law is repealed or appropriately amended. Compliance requires the State to raise additional money to make the payments.

In our present case, the wage increases are temporary. The State is placed in the same position as private employers with whom the State competes for qualified employees. State expenditures are decreased rather than increased and thus no additional revenue need be raised.

Provision is made in § 207 of the Act and the regulations promulgated under the Act for exceptions or exemptions in case of hardship. Such administrative consideration has been afforded the State in the present situation and partial relief has been afforded to the extent of authorizing a 7% wage increase. The Act at § 202 makes the finding that it is necessary in order to stabilize the economy, reduce inflation and to protect the purchasing power of the dollar to stabilize prices, rents, wages, salaries, dividends and interest. Similar findings are made in the Presidential proclamation implementing the Act.

■ We find here, as we did in Murphy v. O'Brien, supra, that a rational basis exists for imposing temporary economic controls on salaries paid by State and local governments. The State has not shown that the wage controls imposed unreasonable interference with the ability of the State of Ohio to function as a sovereign state, or that the Act and the regulations are invidiously discriminatory.

### RES JUDICATA ISSUE.

As heretofore noted, the res judicata issue is raised only by the appellees Ervin, et al., who were the successful parties in the Ohio Court of Appeals for Franklin County. The res judicata defense is based upon the Government being a party to the Ohio Court of Appeals case by reason of the Court having permitted the Government to intervene. The Court's reported opinion reflects that the case was continued pending resort to administrative proceedings and that at a conference between the parties

and the Court on April 6, 1973, the Court asked the parties to brief certain issues, including the following:

1. Does the Tenth Amendment preclude the Government from regulating the salaries of officers and employees of State government.

2. Is there any improper delegation of authority in Executive Order No. 11695.

The Government on April 19, 1973, filed a petition for removal to the federal court and by reason thereof took no steps to brief the issues requested by the State Court. Twenty-eight U.S.C. § 1446(e) provides that after removal "the state court shall proceed no further unless and until the case is remanded." Such language is clear and unambiguous. The federal court remanded the case on June 13, 1973, on the ground that the removal was not timely, noting however that the state court's judgment rendered May 29, 1973, prior to removal, was improper under § 1446(e). The Government was afforded no opportunity to present its position to the State Court of Appeals.

■ Moreover, § 211 of the Act manifests a clear intent to give federal courts exclusive jurisdiction over the constitutionality of the Act and the validity of any action taken by any agency under the Act. The national scope of the Act, its underlying policy and the doctrine of federal preemption, should negate giving any res judicata effect to the State court judgment insofar as it relates to federal government and its authorized agencies. See Kalb v. Feuerstein, 308 U.S. 433, 438–439, 60 S.Ct. 343, 84 L.Ed. 370 (1940); Restatement of Judgments § 71 (1942). We reject the res judicata defense.

### SUMMARY.

We hold that the Act, supported by its legislative history, clearly shows that Congress intended the Act to apply to

states; that Congress under the Commerce Clause acted constitutionally in regulating the State salaries and wages; that the application of wage and salary restrictions to the states was reasonable and ·necessary to accomplish the objectives of the Act; that State sovereignty was not unduly nor unnecessarily interfered with; that the res judicata defense raised by Ervin, et al., is without merit. The Government is entitled to the injunction for which it prays.

It is ordered that an injunction issue restraining the State of Ohio and its officers from paying salary and wage increases provided for in the Pay Bill to the extent that they exceed the amount authorized by the Pay Board.